## APPEAL OF ALBIA BOX & PAPER COMPANY.

Docket No. 1907.   Decided September 29, 1926.

Depreciation charges made on the books of the petitioner prior to 1917 for a series of years on a systematic basis, will not, for invested capital purposes, be disturbed without evidence that the depreciation written off by the petitioner was not actually sustained.

*Robert C. Poskanzer, Esq.,* for the petitioner.
*A. H. Fast, Esq.,* for the Commissioner.

This is an appeal from the determination of deficiencies for the years 1919, 1920, and 1921, in the total amount of $6,940.14. The deficiencies arose from the action of the Commissioner in increasing the depreciation of the machinery, furniture, fixtures, and buildings, reported by the petitioner, thereby reducing invested capital and resulting in the deficiencies in controversy.

FINDINGS OF FACT.

The petitioner is a New York corporation with its principal place of business at Troy, and is engaged in the business of manufacturing box board and paper boxes.

In or about the year 1900, the petitioner purchased the plant and equipment of an abandoned woolen mill. It remodeled the building and reconstructed and installed machinery to meet the needs of the box board and paper box factory. From year to year it kept improving and adding to the machinery and charged the costs to operating expenses. It also improved the buildings but only charged the materials as a capital expenditure and charged the labor thereon to expenses. It pursued this policy in respect to the machinery until 1909, at which time it commenced to take depreciation. It took depreciation on the basis of diminishing values by taking a rate of 10 per cent of the net book value after taking from its machinery account the accumulated reserve on depreciation. For three of the years the petitioner took a reduced rate, as the mill was operated part time during those years, to wit, 5 per cent in 1910, 7½ per cent in 1911, and 5 per cent in 1915. The rates each year were fixed by the board of directors and the action of the board was entered upon the minutes.

A statement of the depreciation taken by the petitioner on its machinery as shown upon its books, is as follows:

*Machinery.*

| Year. | Asset cost Jan. 1. | Additions. | Depreciation taken. | Per cent.[1] |
|---|---|---|---|---|
| 1909 | $43,427.06 | $973.67 | $4,440.07 | 10.1 |
| 1910 | 44,400.73 | 290.10 | 2,500.00 | 5.6 |
| 1911 | 44,690.83 | 8,957.99 | 3,503.15 | 7.1 |
| 1912 | 53,648.82 | 5,534.50 | 4,871.51 | 8.6 |
| 1913 | 59,183.32 | 14,027.99 | 5,787.15 | 8.7 |
| 1914 | 73,211.31 | 1,351.41 | 5,343.58 | 7.2 |
| 1915 | 74,562.72 | 1,491.39 | 2,479.18 | 3.2 |
| 1916 | 76,054.11 | 9,816.26 | 5,692.07 | 7. |
| 1917 | 85,870.37 | 2,409.72 | 5,368.83 | 6.1 |
| 1918 | 88,280.09 | 11,230.94 | 10,420.74 | 11.1 |
| 1919 | 99,511.03 | 3,070.37 | 10,727.78 | 10.6 |
| 1920 | 102,581.40 | 13,854.00 | 12,113.18 | 11.1 |
| 1921 | 116,435.40 | ---------- | 12,113.18 | 10.4 |

[1] The per-cent column shown above represents the rate of depreciation on the gross machinery account and not the rate taken by the petitioner in determining the depreciation on the declining-balance basis.

In 1917 and the following years, on advice of the revenue agent examining the petitioner, it took a flat uniform rate of 10 per cent on the gross machinery account but no adjustments or changes were made for prior years. In the year 1917 the accumulated reserve for depreciation amounted to approximately $39,000, and instead of carrying it as a reserve against gross machinery account, as in former years, it was credited to said account. In the following year it was restored to its original condition with the gross machinery remaining in the machinery account and the reserve for depreciation as a liability account against it.

50144°—27——78

A statement of the depreciation taken by the petitioner on its furniture and fixtures as shown on its books is as follows:

*Furniture and fixtures.*

| Year. | Asset cost Jan. 1. | Additions. | Deductions. | Depreciation taken. | Per cent. |
|---|---|---|---|---|---|
| 1909 | 2,237.73 | 7.50 | 240.00 | 453.05 | 21.3 |
| 1910 | 2,005.23 | 435.75 | | 169.35 | 7.6 |
| 1911 | 2,440.98 | 250.00 | | | |
| 1912 | 2,690.98 | 628.10 | | 271.67 | 8.1 |
| 1913 | 3,319.08 | 209.00 | 87.50 | 256.65 | 7.5 |
| 1914 | 3,440.58 | | | 230.98 | 6.7 |
| 1915 | 3,440.58 | | | | |
| 1916 | 3,440.58 | 225.00 | 27.00 | 227.68 | 6.4 |
| 1917 | 3,638.58 | 315.49 | | 236.47 | 6.2 |
| 1918 | 3,954.07 | 90.00 | 75.00 | 398.90 | 10. |
| 1919 | 3,969.07 | 200.00 | 207.50 | 423.41 | 10.5 |
| 1920 | 4,061.57₈ | | | 423.41 | 10.4 |
| 1921 | 4,061.57 | 385.00 | | 448.40 | 10.5 |
| 1922 | 4,446.57 | | | | |

The petitioner, since its inception, was at all times conservatively managed, maintained its physical assets in good condition, and had always paid dividends.

The petitioner did not take depreciation on its buildings until the year 1915, from and after which date it has taken approximately 5 per cent each year. The Commissioner depreciated the building from 1900 to 1921 at the rate of 3 per cent. The main building, at the time of its acquisition in 1900, was used as a warehouse by an abandoned woolen mill. The petitioner remodeled and improved it from year to year and maintained it in good condition. In later years new floors were laid and heavy timbers 14 inches square that went across the entire building were put in. Modern doors and ventilating shafts 60 inches in diameter were installed to take up the moisture and preserve the building. These principal improvements continued until the year 1915, at which time the building was in better condition than in any of the prior years. The amount of depreciation taken by the petitioner as shown upon its books, is as follows:

*Real estate*

| Year. | Asset cost Jan. 1. | Additions. | Depreciation taken. | Per cent. |
|---|---|---|---|---|
| 1915 | $40,356.30 | | $2,017.81 | 5 |
| 1916 | 40,356.30 | $1,498.43 | 1,991.84 | 4.8 |
| 1917 | 41,854.73 | 312.35 | 1,907.87 | 4.5 |
| 1918 | 42,167.08 | | 2,108.35 | 5 |
| 1919 | 42,167.08 | | 2,108.35 | 5 |
| 1920 | 42,167.08 | 2,551.10 | 2,235.90 | 5.1 |
| 1921 | 44,718.18 | | 2,235.91 | 5 |

OPINION.

Love: The issue in this appeal comes squarely within the principle laid down in the *Appeal of Russell Milling Co.*, 1 B. T. A. 194, *Appeal of Cleveland Home Brewing Co.*, 1 B. T. A. 87, and *Appeal of Rub-No-More Co.*, 1 B. T. A. 228. We are not disposed to disturb the amount of depreciation shown on the books of the petitioner in the absence of evidence that the depreciation written off was not actually sustained. The evidence is clear that the petitioner was conservatively and successfully managed; that since the year 1909 it kept complete book accounts; that said depreciation was in fact charged off its books on a uniform basis determined by its board of directors each year. While it is true the petitioner, prior to 1917, used a diminishing value method of depreciation, not now in good repute in income-tax accounting, that method, nevertheless, in this case did in fact more nearly reflect the true condition than the method used by the Commissioner. According to the Commissioner's method a substantial portion of the machinery still in daily use has been fully depreciated.

The petitioner did not take depreciation in a haphazard manner or as an afterthought. On the contrary, the evidence discloses that not only was the depreciation taken on a systematic basis but that each year the board of directors of the petitioner deliberated and then fixed the rate to conform to their best judgment of the actual depreciation sustained, and their action was recorded on the minutes of the meetings. In our opinion, not only has the Commissioner failed to present any evidence to disturb the amount of depreciation set up on the books of the petitioner, but there has been sufficient affirmative proof to establish the fact that the amount of depreciation taken more truly reflected the actual condition than the amount of depreciation obtained by the rates sought to be imposed by the Commissioner.

The above reasoning also applies to the buildings upon which the petitioner did not commence to depreciate until 1915, and then took a rate of approximately 5 per cent. The Commissioner depreciated the buildings from 1900 at 3 per cent. Even though the counsel for the petitioner finds no fault with a rate of 3 per cent from 1909, we are of the opinion that the amount of depreciation should be as shown upon the books. The evidence discloses that during the period 1900 to 1915, the petitioner had gradually remodeled and renovated an old abandoned woolen mill building used as a warehouse to such an extent that it became suitable for a modern box board and paper box factory. The labor for conditioning the building was not capitalized but carried as an expense. In the judgment of the directors, instead of deteriorating, the building was

being made stronger and more durable until 1915. The directors were in a position to know the actual conditions and we believe from the evidence that their judgment in respect to the building was sound and in keeping with their good judgment in respect to all the business affairs of the petitioner.

To the extent that the amount of depreciation affects invested capital, we are of the opinion that such amounts as appear on the books of the petitioner should not be disturbed.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*